PHILLIPPI, APPELLANT, v. LEET, APPELLEE.

1. ESTOPPEL.
Where one conveys lands with warranty, but without title, and afterwards acquires one, his first deed works an estoppel, and passes an estate to the grantee the instant the grantor acquires his title. But if, after having made a conveyance with warranty without having title, the estate comes to him as a mere conduit in passing it from its owner through him to another person, it does not inure to the benefit of his original grantee.

2. SAME.

A trust estate does not, like an absolute estate, inure to the benefit of the grantee of the trustee, when the latter made the conveyance in his individual capacity.

3. QUIETING TITLE—POSSESSION.

Possession in the plaintiff is necessary in an action to quiet title, but if the possession exists, it is immaterial how it was acquired. A possession obtained by trespass is sufficient for the purposes of the action.

4. QUIETING TITLE.

When the plaintiff is the legal and equitable owner of the land, and it is necessary to resort to evidence *aliunde* the record to explain the true nature of the transaction through which the defendant seemingly obtained a title adverse thereto, he is entitled to have the claim of the defendant adjudged invalid, and any cloud cast thereby upon his title removed by a proper decree.

*Appeal from the District Court of Arapahoe County.*

THE plaintiff below, appellant here, alleges, among other things in her complaint, that she "is the equitable owner and in possession" of a certain piece of land situated in the northwest quarter of section 1, township 4, south of range 64 west, 19.46 feet wide by 338.58 feet in length; that defendant wrongfully holds the legal title to such land and asserts ownership thereof; prays among other things that defendant be decreed to convey the legal title to her. Defendant denies her title and possession; alleges title in himself, and prays that the land in dispute be adjudged his property, etc. The facts, as admitted in the pleadings and sustained by the evidence, are in substance as follows:

One John U. Gabathuler was the owner in fee simple of a strip of land lying in the northwest quarter of section 1, township 4, south of range 64 west, 338.58 feet wide and 2,332.42 feet long. On the 13th day of December, A. D. 1872, he conveyed by warranty deed to Alonzo M. Morrison an acre of said land described by metes and bounds; that afterwards, and on the 30th day of June, 1873, he attempted to convey, by warranty deed, to one Ananias Hearon two acres of said strip, describing the same by metes and bounds; but by mistake the land described in the latter conveyance lapped

on the south end of the acre theretofore conveyed to Morrison 25.1 feet. That by divers and sundry other conveyances he conveyed the remainder of said tract of land to other parties, and by reason of incorrect descriptions in the deeds several conflicts occurred.

Afterwards, and on the 30th day of June, 1885, Ananias Hearon executed and delivered to the defendant, John E. Leet, a warranty deed describing the same land theretofore conveyed to him by Gabathuler. That he (Leet) shortly after discovered the mistake that had been made in the description by Gabathuler to Hearon, his grantor, and that by such mistake he had not obtained title to the full amount of land intended to be conveyed to him, and learning of these other conflicts that existed as to the land conveyed to other parties, and being further informed of the fact that there was sufficient land in the strip originally belonging to Gabathuler that, with corrected descriptions, would give each grantee the full amount of land that he claimed—there being certain hiatuses equaling the amount of the laps—proposed to Gabathuler to obtain quitclaim deeds from all his grantees reconveying to him the legal title, so that he, Gabathuler, might then execute quitclaim deeds back to the respective parties, with correct descriptions, and thus avoid the conflicts. That in pursuance of this arrangement, Alonzo M. Morrison, grantor of the plaintiff, upon the understanding that all the other parties had executed reconveyances to Gabathuler in pursuance of this arrangement, including Leet among the number, on the 29th day of September, 1885, executed his quitclaim deed, thereby reconveying the legal title to the land originally conveyed to him to Gabathuler for this purpose.

All of the then owners of the balance of the strip of land except the defendant Leet likewise executed quitclaim deeds to Gabathuler; whereupon, by quitclaim deeds dated September 29, 1885, Gabathuler reconveyed to the respective parties the same amount of land they originally held, with corrected descriptions so as to avoid the original conflicts.

The quitclaim deed so executed to Alonzo M. Morrison described the same land originally conveyed to him, except it omitted a strip of 5.54 feet in width off the south end, and added a strip of 5.64 feet on the north end of this acre, thus reducing the width of the area of conflict that originally existed between the land held by him and Leet to 19.46 feet.

Gabathuler also on that date executed a quitclaim deed to Leet, including the 5.64 feet thus omitted on the south end of Morrison's land, and adding a strip of land 19.46 feet in width on the south of the two acres conveyed to him by Hearon.

Afterwards, and on the 22d day of June, A. D. 1886, Alonzo M. Morrison conveyed by warranty deed to the plaintiff in this case the land described in the quitclaim deed from Gabathuler to him, which includes the strip in controversy.

The facts that are disputed are as to the part that the defendant Leet took in the procurement of the quitclaim deeds aforesaid to Gabathuler, and as to his agreement to reconvey by quitclaim deed as the others did.  He admits that he first proposed the plan to Gabathuler, and under the employment of Gabathuler interviewed all the other parties and urged them to enter into the arrangement; but claims that before the matter was consummated, and when he learned that the changing of his lines would throw the south end of his land into what was supposed to be a prospective street, he declined to go further and so notified Gabathuler, but he gave no notice to any of the other parties that he had abandoned the scheme.  The evidence on the part of plaintiff is that he continued to act in the matter until the deeds were executed to Gabathuler, and that he accepted the quitclaim deed of Gabathuler to himself above mentioned, under and in pursuance of this mutual arrangement.

The court below found the issues in favor of the defendant, and adjudged him to be the equitable owner and entitled to the possession of the land under and by virtue of section 201,

chapter 18 of the General Statutes of Colorado, which provides :

" If any person shall sell and convey to another, by deed or conveyance purporting to convey an estate in fee simple absolute, any tract of land or real estate lying and being in this state, not being possessed of the legal estate or interest therein at the time of the sale and conveyance, and after such sale and conveyance, the vendor shall become possessed of, and confirmed in, the legal estate of the land or real estate so sold and conveyed, it shall be taken and held to be in trust, and for the use of the grantee or vendee, and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest at the time of said sale or conveyance."

To reverse this decree plaintiff prosecutes this appeal.

Mr. B. F. HARRINGTON, for appellant.

Mr. ROBERT E. FOOT, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

It is plainly apparent from the foregoing statement of facts that counsel for plaintiff in stating her cause of action was under a misconception of the nature of her title to the property in controversy and as to the relation the defendant bears thereto ; and consequently mistook the relief to which she is entitled. The allegation that she was but " the equitable owner," and that the legal title to the property was vested in defendant Leet, was clearly erroneous. Yet, notwithstanding this, sufficient facts are stated to constitute a cause of action entitling her to equitable relief, as it appears therefrom that plaintiff is the owner of both the legal and equitable title and in possession of the property, and that the transaction complained of has cast a cloud upon her title.

By a decided preponderance of the evidence it is shown that the defendant Leet was the prime mover and instrumental in procuring quitclaim deeds to be made by the

various parties to Gabathuler for the purpose, as averred, solely to correct mistakes in former descriptions, and that through his inducement Morrison executed his quitclaim deed to Gabathuler for that purpose only. However, we regard it as immaterial what Leet's action was in the matter, since his connection with the transaction is material, if at all, only to show knowledge on his part (if that was necessary) of the purpose for which the quitclaim deed by Morrison was executed.

Plaintiff's rights are in no way dependent upon the agreement alleged to have been made with Gabathuler, or upon what he did in carrying it out, as she is not seeking to enforce a performance of that agreement. Hence we regard as of no moment the contention of counsel for appellee that the agreement, if made, was verbal and within the statute of frauds. The evidence that Leet had entered into such an agreement, and that plaintiff's grantor, relying thereon, had executed his quitclaim deed, was offered by counsel for appellant under the mistaken notion that the title reconveyed by Morrison to Gabathuler had vested in Leet, and that it was necessary to show such fraud on his part as would estop him from claiming or withholding the title from plaintiff. But we regard this evidence of fraud as immaterial, as it is not necessary to invoke the rule of estoppel, because the reconveyance to Gabathuler by Morrison did not, by virtue of the statute relied on, vest in him either the legal or equitable title to the premises.

The legal and equitable title being in Morrison at the time he executed his quitclaim deed of the 29th of September, 1885, and he thereby conveying only the legal title to Gabathuler, not for the purpose of reinvesting him with any interest or estate in the property, but simply for the purpose above stated, Gabathuler became a mere conduit through which such title passed, and in so passing it could in no sense or manner inure to the benefit of Leet by reason of his former conveyance.

Our statue is but a legislative recognition of a rule of com-

mon law stated in Washburn on Real Property, vol. 3, (4th ed.,) page 118, paragraph 50, as follows:

"Where one conveys lands with warranty, but without title, and afterwards acquires one, his first deed works an estoppel, and passes an estate to the grantee the instant the grantor acquires his title."

But an exception to this rule is stated in paragraph 51, as follows:

"But if, after having made a conveyance with warranty without having title, the estate comes to him as a mere conduit in passing it from its owner through him to another person, it does not inure to the benefit of his original grantee."

And as announced in *Sinclair v. Jackson*, 8 Cowen, 544, "A conveyance to operate as an estoppel, it is necessary that it should be in the same right with the former one. To estop, a conveyance must be by one claiming under and in right of identically the same power and the same estate as he first conveyed."

In *Kelly v. Jenness*, 50 Maine, 455, it was held that:

"A trust estate does not, like an absolute estate, inure to the benefit of the grantee of the trustee, when the latter made the conveyance in his individual capacity."

It is unnecessary to multiply authorities on a proposition so manifestly just and equitable. It follows that the only title which the defendant has to any portion of the land comprised in the original conflict is to that portion only conveyed by Gabathuler's quitclaim deed to him. This deed includes only the 5.64 foot strip, and no part of the 19.46 foot strip involved in this controversy. The legal and equitable title to the latter was in Alonzo M. Morrison, and was by him conveyed to plaintiff by his deed of June 22d, 1886.

It is further urged that the plaintiff did not have the possession which is requisite to maintain an action under section 255 of the Code of 1887. The evidence on this point was that the land was open prairie; that defendant, in the summer of 1885, had a survey made of the tract described in his conveyance from Hearon, and placed stone monuments at the

northeast and northwest corners of the tract of land so described, and upon the land then in possession of plaintiff's grantor. That before commencing this action plaintiff had her tract of land surveyed and staked and erected a fence around it. Counsel for appellee contends that plaintiff, in fencing the land theretofore surveyed and marked by Leet, committed a trespass and took the actual possession in this manner for the purpose of bringing this suit. If this be true it is immaterial. A possession so obtained is sufficient for the purposes of this action. *The Scorpion S. M. Co. v. Marsano*, 10 Nev. 370; *Reed v. Calderwood*, 32 Cal. 109; *Calderwood v. Brooks*, 45 Cal. 519; *Gage v. Williams*, 119 Ill. 563.

Furthermore, her possession was complete without these physical acts to evidence it. The law presumes the true owner to be in possession until adverse possession is shown to begin. The acts of Leet in placing the monuments as above described did not constitute a disseizin of plaintiff's grantor, who at the time, as owner in fee simple, was in possession; and the plaintiff, by his conveyance to her, was placed in his status, and at the time of the commencement of the action was in possession of the land and entitled in that regard to maintain the action.

The court below clearly erred in holding that the plaintiff's possession was not sufficient to entitle her to maintain the action, and in adjudging defendant Leet to be the equitable owner of the land in controversy and entitled to the possession thereof.

It appearing beyond dispute that the plaintiff is the legal and equitable owner of the land, and it being necessary to resort to evidence *aliunde* the record to explain the true nature of the transaction through which defendant Leet seemingly obtained a title adverse thereto, she is clearly entitled to have the claim of defendant Leet adjudged invalid, and any cloud cast thereby upon her title removed by a proper decree. The decree of the court below is, therefore, reversed, with direction to enter a decree in accordance with the views herein expressed.

*Reversed.*