[No. 6590.]

## LAMBERT V. MURRAY ET ALS.

1. QUIETING TITLE—*Plainliff's Possession*—In an action under the col. (Rev. Code sec. 274, Mills, Code sec 255), the complaint must aver not only the plaintiff's title but his possession of the lands. When the answer in the same defense asserts adverse title in defendant and denies plaintiff's possession (if such denial is necessary), such possession must be proven. If no evidence of such possession, or that the lands are vacant, is produced, the plaintiff fails—(159, 160).

2. ——*Presumption of Possession*—Possession is presumed from evidence of title in fee, only when the land is unoccupied—(162).

3. ——*Answer*—An answer asserting an adverse title puts the plaintiff on proof of both title and possession, even though

it also prays that the complaint be dismissed, and that the defendant be decreed the owner. Such prayer of only the relief to which defendant would be entitled, upon mere assertion of his claim, will not be regarded as a waiver of proof of the plaintiff's possession. *Relender v. Riggs*, 20 Col. Ap. 423; distinguished—(160, 161).

Save in the case of unoccupied lands, and possibly such real property as a water right, the statute requires an actual possession—(164).

4.  PRECEDENTS—*Construction*—Every judicial opinion must be taken with connection of the facts of the particular case—(163).

5.  DEED—*Description*—*False Demonstration*—A deed conveying lands by the numbers of the section town and range, but declaring that the lands are situate in Arapahoe County, when in fact they are situate in Washington, the reference to the county is rejected—(166, 167).

6.  ——*Acknowledgment*—A conveyance of lands bearing a certificate of acknowledgment which shows upon its face that the commission of the certifying officer had expired years before the date of the certificate, is not to be received, without other proof of its execution—(167).

7.  TAX TITLES—*Void Deed*—A tax deed which recites that the lands were struck off to the county on the first day of the sale, or the first day on which they were offered is void—(168).

So a deed which shows upon its face that it is based upon a sale to the county, and an assignment of the certificate by the clerk, more than three years after the sale, at a time when the law authorized such assignment only within that period—(168).

8.  TAX PURCHASE CERTIFICATE—*Assignment*—The county clerk when by law authorized to assign a tax purchase certificate may do so either in his own name, or in the name of the county.

If the assignment bears date after the lapse of the period during which the clerk is authorized to make such assignment, the circumstances that it is in the latter form will not raise the presumption that the assignment is the act of the county, or authorized by the county commissioners, in the absence of evidence of such authority—(168, 169).

9.  VOID TAX DEED—*Recovery of Taxes Paid*—In an action to quiet title the defendant claiming under a void tax deed is permitted to prove the amount of taxes paid by him to obtain an assignment of the tax certificate upon which the deed is founded—(169).

10. ——*Decree Quieting Title*—Should pursue the rule prescribed in *Charlton v. Kelly*, 24 Colo. 275.

*Error to Washington District Court.*—HON. H. P. BURKE, Judge.

Messrs. ALLEN & WEBSTER, for plaintiff in error.

Mr. J. E. MCCALL, Messrs. STUART & MURRAY, for defendants in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This writ of error was sued out to review a judgment of the district court in favor of the plaintiffs, who are defendants in error here. The action was one to quiet title. The complaint was in the usual form. The answer consisted of five numbered paragraphs. The plaintiffs seem to insist that each of these paragraphs was a separate answer, while the defendant contends that they all constitute one answer. It is unnecessary to determine this. It will be assumed, as the plaintiffs seem to contend, that the third paragraph is a separate answer, and it will be spoken of hereafter as the answer. In this answer, the defendant alleged that he was the full, absolute and unqualified owner in fee simple of the land described in the complaint, and then stated, perhaps unnecessarily, that he obtained his title by a tax deed from the county treasurer of the then county of Arapahoe. It is then alleged that, under and by virtue of the tax deed, the defendant took and ever since has remained in possession of the premises, and that he paid all taxes assessed thereon since the date of the tax sale, which, together with the sum bid at the said sale, amounted to the sum of $300.

The allegations in the answer of ownership and possession in the defendant are in effect a denial of ownership and possession in the plaintiffs. *Bessemer I. D. Co. v. Wooley,* 32 Colo. 437 at 440. The answer, therefore,

which constituted one defense, not only asserted an adverse interest in the defendant, specifying its nature, but also denied that the plaintiffs were in possession of the premises.

Section 274 Rev. Code, (Sec. 255 Mills' Code) under which the action was brought, reads:

"An action may be brought by any person *in possession* by himself or his tenant, of real property, against any person who claims an estate therein adverse to him, for the purpose of determining such adverse claim, estate or interest."

This statute is plain. The person who may bring such an action must aver his possession, coupled with his title to the premises. This the plaintiffs did. Before the defendant could put the plaintiffs upon proof of their possession and ownership it was necessary for him to assert an adverse interest in himself. The defendant, in the answer under consideration, not only asserted an adverse interest in the premises, specifying its nature, but also denied the possession of the plaintiffs.

These are the facts with reference to the pleadings under consideration. It is to these facts that the law must be applied. Under all the decisions of this court, the assertion of an adverse title in the defendant with a specification of its nature, coupled in the same defense with a denial of the possession of the plaintiff, (if such a denial is necessary) is sufficient to put the plaintiff upon proof of his title and possession, and, under such circumstances, the proof of the one is as necessary for the maintenance of the action as the proof of the other.—*Wall v. Magnes,* 17 Colo. 476; *Phillippi v. Leet,* 19 Colo. 246; *Reynolds v. Campling,* 23 Colo. 105; *Mitchell v. Titus,* 33 Colo. 385; *Lambert v. Shumway,* 36 Colo. 350; *Sayre v. Sage,* 47 Colo. 559; *Buckland v. Fielder,* 48 Colo. 153;

*Empire Co. v. Bender,* 49 Colo. 522.

No proof whatever was offered or admitted touching plaintiffs' possession, nor was it shown that the land was vacant or unoccupied. At the close of plaintiffs' case, a motion was made that the complaint and action be dismissed for the reason that the evidence was insufficient to sustain the allegations of the complaint and because no proof had been submitted requiring the defendant to make any defense. This motion was overruled, and the defendant did not thereafter supply any deficiency in plaintiffs' proof. It is the contention of the plaintiffs that the defendant set up an affirmative defense and asked for such affirmative relief as to now preclude him from requiring that the plaintiffs prove possession. The weakness of plaintiffs' contention in this regard lies in the fact that the defendant did not set forth an affirmative defense in the nature of a cross-complaint, nor ask for any relief except such as he was entitled to under the statute. It is plain from a reading of section 274 *supra,* that the purpose of such an action is to determine the adverse claim, estate or interest of the defendant, and in this determination the relative merits of the two titles would be involved. The defendant set forth just what the statute required, namely, his adverse interest. In his prayer, perhaps unnecessarily, he asked that the complaint be dismissed; that he be decreed the owner of the lands described in the complaint; that the plaintiffs are without title, and for his costs. The determination of the adverse title would necessarily result in just what the defendant asked for, if he sustained his answer, so that his prayer asked for no other relief than he would have been entitled to if he had merely alleged his adverse title and omitted the prayer. To hold that, on account of his defense and prayer, he waived proof of possession by plain-

tiffs, would be to say that the assertion of his adverse
title, which the statute required, would be such a waiver,
and the statute, so far as possession is concerned, would
be thus entirely abrogated.   The plaintiffs base their con-
tention upon the case of *Relender v. Riggs,* 20 Colo. App.
423.   That case is entirely different from this one.
There, the defendant filed a cross-complaint, setting forth
that plaintiff's title was based on a sheriff's deed; that the
judgment upon which the execution had issued was ob-
tained upon an indebtedness that had originated in fraud
against the company that owned the premises; that the
defendant obtained a judgment against the same com-
pany and had purchased the premises under an execution
sale after the plaintiff's purchase; that the sheriff had re-
fused to issue a deed to the defendant and was a neces-
sary party to a complete determination of the contro-
versy.   Upon this state of facts, the court said:

"The cross-complaint set forth the title of defendant
to a portion of the premises, what was supposed to be
plaintiff's title, and defendant's objections thereto, pray-
ing : that defendant be adjudged to be the owner of the
land described in his answer; that the sheriff be ordered
to execute a deed to him therefor, and that the sheriff's
deed to plaintiff be cancelled.   In other words, the de-
fendant sought, by his cross-complaint, to have his title
perfected and quieted."

The answer here was far from the cross-complaint
filed in the Relender case, and furthermore this defend-
ant objected to the failure of proof when plaintiffs closed
their case.   That was not so in the Relender case.   The
holding of that case is set forth in the syllabus, thus:

"In an action to quiet title defendant, by filing a
cross-complaint in which he sought to have his own title
quieted, and by failing to object to the insufficiency of

plaintiff's proof at the close of plaintiff's testimony, waived objection to plaintiff's failure to prove possession."

The other cases cited by the plaintiffs are similar to the Relender case and are not applicable. The plaintiffs also say that they proved title in fee in themselves and that such title carries with it a presumption of possession sufficient to make *prima facie* proof thereof. They base this claim principally upon the case of *Walker v. Pogue,* 2 Colo. App. 149, wherein the court, in the course of its opinion, said:

"The possession of real property is in all cases supposed to follow a conveyance of the legal title unless retained for a given time by contract of the parties."
This is no doubt true as an abstract proposition. It is supposed that when a person sells real estate that he delivers the possession, but a supposition is not a presumption. Furthermore, the court held that the case was not an action to quiet title under section 274, but was an action to set aside a conveyance made by the plaintiff on the ground of fraud, so that the question of possession was wholly immaterial in that case, and anything said with regard to it was *obiter.* The decisions of this court, in cases under section 274, confine the proof of title as being sufficient proof of possession to vacant and unoccupied lands.

In *Morris et al. v. St. Louis N. Bk.,* 17 Colo. 231, it is said that there is a fiction of law that the possession of vacant or unoccupied lands follows the legal title, expressly excepting, however, from this fiction the case of a legal title derived through a tax deed. In *Phillippi v. Leet, supra,* it was said that the evidence showed that the land in controversy was open prairie, and that the defendant had a survey made of the tract and placed monu-

ments at the corners of the land then in possession of plaintiff's grantor. The language of every opinion must be taken in connection with the facts to which it is applied. It appears in that case that the defendant contended that the placing of the monuments at the corners had given him actual possession, and that the plaintiff had thereafter taken actual possession for the purpose of bringing the suit, and in doing that had committed a trespass. The court held that if possession was thus obtained it was sufficient for the purposes of the action, and then said:

"Furthermore, her (plaintiff's) possession was complete without these physical acts to evidence it. The law presumes the true owner to be in possession until adverse possession is shown to begin. The acts of Leet (defendant) in placing the monuments as above described did not constitute a disseizin of plaintiff's grantor, who at the time, as owner in fee simple, was in possession; and the plaintiff, by his conveyance to her, was placed in his status, and at the time of the commencement of the action was in possession of the land and entitled in that regard to maintain the action."

So it appears that that case simply held that plaintiff's grantor, being the owner of the vacant land, was in possession thereof; that the acts of defendant did not amount to a disseizin, and that plaintiff took a deed from an owner in possession of vacant land and held it in the same manner. In *Mitchell v. Titus, supra,* which was an action under section 274, the court said:

"At the time of the bringing of this action, the lots were vacant. The ownership in fee of plaintiff in the lots carried with it the possession thereof for the purpose of this action, in the absence of actual entry and adverse possession taken by another."

In *Keener v. Wilkinson,* 33 Colo. 445, it was said.:

"It appears from the testimony that the premises involved were vacant.

The sheriff's deed, under the foreclosure decree, vested in appellee the ownership of the fee, which carried with it the possession of the premises for the purposes of this action, in the absence of actual entry and adverse possession taken by another."

In *Empire Co. v. Bender,* supra, it appeared that plaintiff's grantor was in possession as owner of the land at the time he conveyed it to plaintiff, and at the time of the commencement of the action it was vacant and unoccupied, and it was held that the title in fee in the plaintiff carried with it presumptive possession, and entitled her to maintain the action in the absence of an actual entry and adverse possession by another.

To bring their case within the doctrine of these decisions it was necessary for plaintiffs to prove that the land was vacant and unoccupied, and this they failed to do. Excepting with reference to vacant and unoccupied land, and possibly such real property as a water right, *(Gutheil P. I. Co. v. Montclair,* 32 Colo. 420) the possession contemplated by section 274 is actual possession. —*Murphy v. Hinds,* 15 Minn. 182; *Greene v. Dwyer,* 33 Minn. 403; *Douglass v. Nuzum,* 16 Kans. 515; *Pierce v. Thompson,* 26 Kans. 714; *Hoffman v. Woods,* 40 Kans. 382; *Von Phul v. Penn,* 31 Mo. 333; *Cantlin v. Land & Lumber Co.,* 151 Mo. 159; *Adams v. Black,* 183 Ill. 377; *Sheppard v. Nixon,* 43 N. J. Eq. 627; *Yard v. Ocean Beach Assn.,* 49 N. J. Eq. 306.

Now it is the claim of plaintiffs that the proof of their legal title to the land carries with it the proof of the possession required by the statute, which has been found to be actual possession, but this did not prove actual

possession. At the most, it was a constructive possession, for it is the latter possession that follows in the wake of title. On this point, it is said in *Churchill v. Onderdonk,* 59 N. Y. 134:

"Actual possession, as a legal phrase, is put in op- position to the other phrase, possession in law, or constructive possession. Actual possession is the same as *pedis possessio* or *pedis positio,* and these mean a foothold on the land, an actual entry, a possession in fact, a standing upon it, an occupation of it, as a real demonstrative act done. It is the contrary of a possession in law, which follows in the wake of title, and is called constructive possession."

In Minnesota, there was a statute identical with our section 274. Later, this statute was amended by adding a clause permitting a person claiming title to vacant and unoccupied lands to bring the action, which amendment is the law of this state without statute. In *Murphy v. Hinds, supra,* referring to the part of the statute identical with ours, the court said that to maintain the action the plaintiff must establish possession in fact. There, as here, the plaintiff introduced his title and relied upon it alone to prove his possession, and the court said:

"When no one is in actual possession of land, proof of a paper title may establish a *constructive* possession in the holder of such title, because under such a state of facts possession follows title, (citing authorities). But the constructive possession, from the very fact that it is constructive, is not actual possession. The plaintiff then, having failed to make out a case, the defendant's motion for a non-suit was erroneously overruled."

Other quotations of a similar nature, under similar facts, could be made from the other authorities cited, but enough has been said to fully demonstrate that possession

in fact, as distinguished from that constructive possession which follows in virtue of title, was necessary to maintain this action, unless the land was vacant and unoccupied, and that the proof of title does not prove actual possession.

Beyond a doubt, the plaintiffs, having been put upon proof of their actual possession, or that the land was vacant and unoccupied, failed to prove either, and in consequence their action failed. On this account the judgment must be reversed. In view of a new trial other questions raised will be noticed.

The defendant also claims that the plaintiffs failed to prove their title. There was admitted in evidence a deed from one Rich to the defendant. Objection was made to this deed, because, as was said, first, it did not contain words sufficient to constitute a conveyance, second, it said the land was in Arapahoe county, while the truth is it was in Washington county, when the deed was executed, (it having formerly been a part of old Arapahoe county) ; and third, it was not acknowledged as the law requires. The first two objections are untenable. The deed recited that, "Joseph W. Rich, for and in consideration of the sum of $150.00, grants, bargains, sells, conveys and confirms, unto the Bank of Akron, of Akron, Colorado," the land in controversy, (describing it) and then follow covenants of seizin, freedom from incumbrances, right to convey and warranty, and the evidence showed that the Bank of Akron was the plaintiffs. The description in the deed is: "the following described real estate, situate in the county of Arapahoe, in the state of Colorado, to-wit: All of the northeast quarter of sec. 15 in township 5 south, range 52 west of the 6th principal meridian, containing 160 acres of land, more or less, according to government survey." The particular quar-

ter section in the section, township and range mentioned, can be easily located without reference to any county, so that it was immaterial whether the right or wrong county or any county was mentioned. The acknowledgment purported to have been taken on the 30th day of June, 1907, before a notary public in Nebraska. The certificate of acknowledgment is sufficient, but the notary certified that his commission expired September 28, 1897, about ten years before the acknowledgment of the deed. It may be that competent evidence might have been introduced to show that the purported notary was a notary public at the time the deed was acknowledged and that his certificate of the expiration of his commission was a mistake, but no such evidence was offered. The statute says that an acknowledgment may be taken before a notary public. That certainly means that he shall be a notary at the time he takes the acknowledgment. This man certified that he was not a notary when he took the acknowledgment. It cannot be presumed that the certificate is false, nor that there was a mistake. The case of *Quimby v. Boyd,* 8 Colo. 194, relied on by the defendant, does not at all apply to the facts present, as a reading of that case will show. So far as the acknowledgment was concerned the deed was inadmissible. The instrument admitted was the original deed. Both parties seem to have overlooked section 696 Rev. Stat., which provides that unacknowledged deeds are admissible in evidence when "their execution be otherwise proved in the manner required by the rules of evidence applicable to such writings, so as to supply the defects of such acknowledgment or proof." The objection to the admissibility of this deed went only to the want of a proper acknowledgment, and did not go to the fact that the execution of the instrument had not been otherwise proved in the manner required by the rules of

evidence applicable to such a writing. The deed, not having been objected to on this ground, was properly admitted. The defendant offered in evidence a tax deed, which the court excluded. It appears from this deed that the land was struck off to the county. The recitals in the deed are the same as those in the deed under consideration in the case of *Bryant v. Miller*, 48 Colo. 192, as to the time it was offered and struck off to the county. It clearly shows on its face that the land was offered for sale for taxes on one day only and struck off to the county on that day. Upon the authority of *Bryant v. Miller, supra*, it was void on its face. It also appears on the face of the deed that the sale was made in October, 1896, and the certificate was assigned by the county clerk on the 15th day of March, 1901—more than three years after the date of the certificate. The recital in the deed with reference to the assignment was as follows: "And, Whereas, The said Arapahoe county, by Julius Aichelle, clerk of said county, did on the 15th day of March, A. D. 1901, duly assign the certificate of the sale of property," etc. Under the law, as it then existed, the assignment by the clerk after the lapse of three years was a nullity and such assignment appearing in the deed renders the latter void upon its face.—*Empire R. & C. Co. v. Coldren*, 51 Colo. 115, 117 Pac. 1005; *Munson v. Gillett*, 51 Colo. 147, 116 Pac. 1055.

The defendant lays some stress upon the words "Arapahoe county, by Julius Aichelle, clerk of said county," and urges that the county could transfer the certificate at any time. The law required the certificate to be issued to the county, and made its clerk, for the period of three years, an agent of the county for the purpose of the assignment. If the county clerk acted within the statutory period, the assignment would be the assign-

ment of the county and could be described as having been made by the county by its county clerk, or simply by the county clerk. If the deed had simply recited that Arapahoe county had assigned the certificate, there might be some room for defendant's argument. It may be that the county commissioners could have assigned the certificate, but it nowhere appears that they did so, or that they authorized anyone else to do it for them. All that appears is that the county clerk attempted to make the assignment for the county after the lapse of three years, the same as he might have assigned it for the county before the expiration of the statutory period. The defendant alleged in his answer that he had paid the sum of $300, made up of what he had paid at the sale and for subsequent taxes. He offered to prove the amount of taxes paid by him for the years from 1896 to 1900, both inclusive, up to the attempted assignment of the certificate. This offer was denied. Apparently, the evidence was deemed immaterial because the deed was void on its face. There is no evidence in the record as to how much was paid by defendant, yet in the decree it was found that he had paid $73.28 for which he should have been reimbursed, and the plaintiffs were ordered to pay this to the clerk for defendant, within twenty days. The defendant should have been permitted to prove the amount he had paid as he offered to do. It may have amounted to more than $73.28. We are not called upon to determine whether or not the defendant was entitled to have refunded to him any amount he had paid for taxes while claiming under this void deed. The payment which he offered to prove was made before the deed issued for the purpose of obtaining the certificate from the county, as the law required in such cases. If the defendant had not taken a deed, the owner could have redeemed from the

tax sale by paying the amount of the sale and subsequent taxes. As the deed was void on its face, the owners, on its cancellation, were let in to redeem as it were, and when the taxes for which the sale was made, as well as the subsequent taxes, to the time of the deed, were legally assessed and due, it seems fair that they should pay the amount that the owner would have to pay to redeem under ordinary circumstances. Support for this is to be found in *Charlton v. Kelly*, 24 Colo. 273. The decree is an absolute one. While it ordered the payment of $73.28 there was no preliminary order adjudging its payment before the entry of an absolute decree, nor was the taking effect of the decree made dependent upon its payment, so as to preserve to the defendant a lien for the amount paid. The rule to be observed in this regard is set out in *Charlton v. Kelly, supra,* and it is unnecessary to repeat it here.

The judgment is reversed and the cause remanded for new trial in accordance with law.

*Reversed and remanded.*

Mr. JUSTICE WHITE and Mr. JUSTICE BAILEY concur.